### HOFNAGEL v. UNITED TRACTION CO.

(Supreme Court, Appellate Division, Third Department. January 21, 1914.)

Appeal from Albany County Court.

Action by Matthew Hofnagel against the United Traction Company. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Patrick C. Dugan, of Albany, for appellant.
Henry J. Crawford, of Albany, for respondent.

PER CURIAM. Judgment affirmed, with costs.

WOODWARD, J. (dissenting). The plaintiff in this action claims to have been ruptured by coming into contact with a guy wire maintained by the defendant in connection with its trolley equipment of its street railroad. This accident happened near the boundary line of the city of Albany, along the highway leading to Schenectady. It was out beyond the stone or cement walk district, and the street was 99 feet in width, some 21 feet being south of the curb line, and this portion being used in a general way for sidewalk, though it appears that there was a cinder path several feet in width which was commonly used for pedestrians. Just south of the curb line the defendant maintained one of its many trolley poles. This was about 28 feet tall, and from a point near the top of this pole a guy wire extended south to a point just within the street line, and within about 18 inches of a large elm tree. North from this elm tree, at a distance of 2 feet, the guy wire was 5 feet above the surface of the ground, and at a distance of 3½ feet from the tree the guy wire was 7 feet from the ground surface, and the accident is claimed to have happened by reason of the plaintiff catching his chin upon this guy wire while walking along the highway. He was carrying some iron pipes on his shoulder, with the forward end down, and it is claimed that when he came in contact with this wire he was thrown backward, without falling, the iron pipes striking the ground behind him and supporting him, and it is the theory of the case that the strain thus produced operated to rupture the plaintiff.

The defendant urges that the case fails to show that it was maintaining this guy wire, but we are of opinion that the pleadings are conclusive upon this point, and that we must assume that the defendant had been maintaining this trolley pole, with the supporting guy wire, for a considerable period of time, but upon the theory of negligence this is hardly an adverse holding to the defendant; for, while there was some evidence in the case that a young woman walking in the dark with a young man had had her hat knocked off by this guy wire, there was no evidence in the case that any one had ever been injured by the wire, or that the defendant's attention had ever been called to the fact that it was encroaching upon the sidewalk space. The evidence clearly indicates that the situation on the night of the accident was that the guy wire cleared the trodden path and left it entirely safe for pedestrians, and that this condition had existed for many months, probably years, prior to the accident, with no one being injured, and no one complaining. The only suggestion of any one ever having come in contact with the wire is furnished by a young woman who appears to be "keeping company" with a stepson of the plaintiff, and she merely claims to have had her hat knocked off by it, the accident not suggesting any complaint, so far as appears, so that we have the situation of a country highway in which the guy wire of a traction line encroached slightly upon the broad sidewalk space of a wide street, such encroachment having existed for a long time without accident and without complaint, and where there was ample space along the beaten path for pedestrians, with no liability of contact with the wire. Whatever we might think of the question if the action was predicated upon nuisance (and this cause of action was pleaded, but abandoned upon the trial),

we are persuaded that standing by itself it would not justify a finding of negligence against the defendant.

This makes it important to consider the question of the ordinance of the city of Albany introduced in evidence over the objection and exception of the defendant. The ordinance, including its title and headlines, was read in evidence over the defendant's objection that it had no relation to the guy wire in question, and the question thus presented is one of vital importance to the defendant, for without it there is very little of foundation for a charge of negligence in maintaining this guy wire, and it cannot be presumed that the jury would have found for the plaintiff. The ordinance, as it appears in evidence, is as follows:

"Chapter 45. Of telegraph, telephone, electric light, electric railway and electric power lines. * * * Material for posts or poles. Sec. 4. All posts for telegraph, telephone and electric lines shall be straight, properly trimmed and painted, shall not be less than twenty-five feet in height from the ground, shall be of iron, cedar, pine or chestnut, and, if of wood, not less than six inches in diameter at the smaller end and ten inches in diameter at the ground. Such posts shall be properly set in the ground to the depth of at least five feet. Wherever any wire shall cross any street or way it shall be at a height not less than twenty-five feet above such street or way, and, where practicable, cross at right angles. In cases where any such wire shall be connected with any building, it shall be attached to the top or fire wall of such building."

Obviously the only purpose of this ordinance is the regulation of the height of wires crossing the streets, and probably could not be construed to reach even the trolley wires carrying the current and crossing the intersecting streets, for it is well known that in practical operation the trolley wires are not carried more than 22 feet above the surface of the ground; 21 feet and 6 inches being the clearance required for railroad crossings. The language of the ordinance is to have its common use, and when we speak of telegraph, telephone, electric light, electric railway, and electric power lines, and their wires crossing the street or way, we refer to a crossing of a public way in the ordinary course of its lines between given points, and have no reference to a mere guy wire (which might be a chain, a wire rope, or a steel bar) which may be used in supporting one of the poles on which these lines are carried. Note the language:

"Wherever any wire shall cross any street or way it shall be at a height not less than twenty-five feet above such street or way, and, where practicable, cross at right angles."

This language is used in connection with the provisions of the ordinance in reference to all "posts for telegraph, telephone and electric lines," and obviously relates to the wires carried by such posts, and used for the transmission of electric energy, and has no more relation to a guy wire than it would have to the short wires used in tying the ends of the rails together, and which are covered over usually with paving materials. A thing which is within the letter of a statute or ordinance is not within the statute or ordinance unless it be within the intention of the makers (Riggs v. Palmer, 115 N. Y. 506, 509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819), and clearly no one contemplated in making the ordinance above quoted that it had anything

to do with a bracing wire extending over a portion of the highway. The object of the ordinance was to preserve to the traffic of the highway a clearance sufficient not to interfere with loads of hay, circus wagons, and other large vehicles which might be expected to use the street in the regular course of business, and it was error to admit it into the evidence in the case now under consideration, and this error was aggravated by the charge of the learned court, who quoted that provision of the ordinance in reference to wires crossing the street, and clearly left the jury with the view that this had a bearing upon the question at issue. It had no legitimate place in the case, for there was no violation of the ordinance; it was not shown that any wire which crossed the street or way was less than 25 feet from the surface of the ground. The wire in question did not cross the street. The evidence is that it was all within the street; that it extended from the post near the south curb line to a point just north of the south line of the highway, a distance of about 20 feet, and it at no point covered that part of the highway given over to a vehicular traffic, and was not, therefore, within the spirit of the ordinance.

The conclusion which we have reached makes it unnecessary to discuss further alleged errors, some of which certainly present serious questions, but it will not be presumed that they will appear in a subsequent trial.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event.